Argued and submitted January 22, dissolution judgment reversed and remanded with regard to property division, spousal support, and child support; otherwise affirmed, supplemental judgment for attorney fees reversed September 18, 2013

In the Matter of the Marriage of

Victoria Marcel SALGADO,
*Petitioner-Respondent,*

*and*

Avel Rincon SALGADO,
*Respondent-Appellant.*

Lane County Circuit Court
151009612; A148101

310 P3d 731

George W. Kelly argued the cause and filed the briefs for appellant.

Katina R. Saint Marie argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Husband appeals a dissolution judgment, requesting that we modify the trial court's property division and reduce his spousal support and child support obligations. With respect to the property division, husband argues that the trial court erred in valuing the family business at $600,000, awarding it to him, and awarding wife an equalizing judgment for half that amount. The court compounded the mistake, he argues, by failing to take that equalizing judgment into account when calculating his support obligations. More specifically, he argues that, after the equalizing judgment, his income is not sufficient to pay the amount awarded in spousal and child support, and that the equalizing judgment (and interest on that judgment) should be treated as wife's income for calculating child support. For the reasons that follow, we agree that the trial court erred in valuing the business, and that the judgment must be reversed and remanded for that reason. Because the support obligations are intertwined with the property valuation (and any equalizing judgment), we do not reach husband's assignments of error concerning support issues, but instead remand those issues for the trial court to consider in the first instance.[1]

We begin with a brief summary of the background of this case, as well as a description of the record that developed concerning the valuation of the business, which is the dispositive issue before us. Husband and wife married in 1990 and have two children together, one of whom was a minor at the time of dissolution. In 1998, husband and wife bought a reforestation business, Oregon Forest Management Services, Inc. (OFMS). Husband had previously been an employee of OFMS, and husband and wife bought the business from husband's employer for $30,000, using their marital residence as security for the purchase. At the time they bought OFMS, the company owned two trucks and had six employees.

---

[1] Husband also appeals a supplemental judgment that awarded attorney fees to wife. In light of our disposition, we reverse and remand the supplemental judgment as well. ORS 20.220(3)(a) ("If the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed[.]"). On remand, the court will have an opportunity to consider the issue of attorney fees after first deciding property division and support issues.

During the marriage, OFMS grew significantly. At the time of dissolution, OFMS owned five trucks and a van, and had approximately 15 employees. Much of the company's success depends on the bidding process, which husband handles himself. OFMS's larger clients, such as Weyerhaeuser, might have as many as eight contactors bidding for its reforestation work, and husband must bid successfully and profitably—*i.e.*, obtain contracts at profitable margins—for OFMS to stay in business. In recent years, OFMS has grossed as much as $1 million annually; over the course of the marriage, it generated an average annual income of $240,000 for husband and wife. The business was the primary source of the parties' income during the marriage; wife assisted 5 to 10 hours per week with OFMS's "payroll, filing, miscellaneous office tasks, answering phones, reconciling checkbooks, delivering paperwork to the accountant, just numerous small office tasks like that," but otherwise was a homemaker during the marriage.

At the dissolution hearing, husband and wife offered divergent estimates of the value of OFMS. Neither husband nor wife offered expert testimony to substantiate their respective valuations; rather, each testified as an "owner" of the business. Husband took the position that the business is worth "whatever assets it's got"—"[t]he trucks, the equipment, and that's about it." He explained:

> "I believe that because, you know, I basically run the business inside and out. You know, without me, the business is worth whatever assets we got. I do the bidding. I do the payroll. I do work outside, inside * * *."

When asked to put a value on the assets, husband responded, "Probably—I would say around 70 or [$]80,000."

Wife, meanwhile, testified as follows:

> "[WIFE'S COUNSEL:]   You're familiar with the amount of vehicles, the condition of the vehicles, and you've recently seen [husband's] tax returns and bank records and your own bank records, haven't you?
>
> "[WIFE:]   Yes.
>
> "Q.   And based upon that information, do you have an opinion as an owner of this business what you think the reasonable fair market value of this business is?

"A.  Yes, I have an opinion.

"Q.  What is that opinion?

"A.  *Approximately 5 to $600,000.*

"Q.  *Do you base that upon multiple earnings?*

"A.  *Yes, I do. Multiple earnings, net income.*

"Q.  *That's net income to you and Mr. Salgado?*

"A.  *Yes, sir.*

"Q.  Not the gross income?

"A.  Not the gross income from the company."

(Emphases added.) On cross-examination, wife further explained how she had arrived at a valuation of $500,000 to $600,000:

"[HUSBAND'S COUNSEL]:  So you think the business is worth how much? Did you venture a guess? I thought you were indicating you had a figure for (Inaudible) for the business.

"A.  Just by looking up simple information online, just for my own information, *just a multiple of earnings, probably 500 to 600,000.*"

(Emphasis added.)

Later, wife was again asked how she came up with the $500,000 to $600,000 estimate. She responded, "I had gone online just to read and get some personal information, but I don't have—like I told you, *I'm not a business professional. I was just looking online for information.*" (Emphasis added.)

At the close of the evidence, wife urged the trial court to value the business at $600,000, based on her testimony, as well as the fact that the business enjoys a good reputation and generates significant earnings. Husband reiterated his position that the business had no value as a going concern, apart from its assets, because husband's personal involvement in the business, and his ability to bid contracts, were integral to its success. *See Slater and Slater*, 240 Or App 30, 41, 245 P3d 676 (2010), *rev den*, 350 Or 408 (2011) ("[O]ur cases demonstrate that, for purposes of valuation in this context, cognizable goodwill refers to the value of a business over and above the value of its assets irrespective

of the owner's or professional's continued personal services * * * or personality or reputation." (Internal quotation marks and citations omitted.)).

In a subsequent letter opinion, the trial court concluded that OFMS should be awarded to husband as part of the property division. As for the value of the business, the court found "the evidence offered by [husband] as to the value of OFMS, its gross income, the amount of distributions OFMS gives him and his arrangement with his brother [a job foreman] to give him in excess of $100,000.00 as 'deferred compensation' to not be credible." The court further found that "OFMS is *conservatively valued by the Court at $600,000.00 based upon a multiple of earnings valuation model.* The company has consistently grossed between $800,000.00 and $1,000,000.00 in the last several years. It enjoys an excellent reputation and has well-established accounts with large companies." (Emphasis added.) After further determining that husband had not rebutted the presumption of wife's equal contribution to the business, the trial court concluded that wife should receive an equalizing judgment in the amount of $300,000.

On appeal, husband argues that the trial court "erred in finding husband's business was worth $600,000," and that "wife's testimony, by any reasonable thinking, was entirely guesswork: She went online, found some information about 'income multiplication,' and with no other background than that, gave her opinion." Husband urges us to simply disregard the trial court's valuation, because "[i]n view of the speculative nature of wife's testimony, its utter lack of supporting evidence, and the amounts at issue, it would be entirely appropriate for this court to review *de novo.*" *See* ORS 19.415(3)(b) (describing discretionary *de novo* review); ORAP 5.40(8)(c) (providing that we exercise *de novo* review "only in exceptional cases"). Wife, for her part, urges us to defer to the trial court's credibility determinations and affirm its valuation of the business.

We decline husband's request to exercise *de novo* review because we conclude that, regardless of how we view the record, the trial court's valuation must be reversed and remanded. We appreciate that it is generally left to the trier

of fact to choose among valuation methodologies when determining fair market value. *See, e.g., City of Bend v. Juniper Utility Co.*, 242 Or App 9, 21, 52 P3d 341 (2011) ("[U]nless some fixed principle of the law demands otherwise, it is left to the trier of fact to assess the evidence, including expert testimony regarding the appropriateness of a particular valuation methodology, and to then make a factual call as to the fair market value of the property in question."). That said, when a trial court in a dissolution case relies on a particular valuation methodology—here, a "multiplication of earnings" approach—there must be at least some evidence in the record that sets forth that methodology. Putting aside for the moment whether a "multiplication of earnings" methodology requires expert testimony, the record in this case is devoid of evidence of what such a methodology looks like, or how it is employed. The only evidence regarding a "multiplication of earnings" valuation came from wife, who testified that she had valued OFMS somewhere between $500,000 and $600,000 by "looking up simple information online, just for my own information, just a multiple of earnings, probably 500 to 600,000." Wife did not further identify the source of that "simple information," or elaborate what type of formula or methodology she (or an unnamed online resource) employed. By wife's own admission, she was "not a business professional" but rather "just looking online for information."

The trial court, which "conservatively" valued OFMS at the uppermost limit of wife's estimate, likewise purported to employ a "multiple of earnings valuation model." Yet, the trial court did not explain the nature of that valuation methodology, or describe how that methodology could conceivably support a valuation of $600,000 for OFMS. In short, regardless of the trial court's understanding of the "multiple of earnings valuation model," the methodology is not supported by any evidence in the record before us.[2]

Wife argues that we should nevertheless affirm the $300,000 equalizing judgment because the trial court reasonably chose wife's "best-efforts calculation" over husband's

---

[2] If the trial court relied on its own understanding of valuation methodologies, it is not apparent from the court's letter opinion, which provides a conclusory valuation. Nor did the court suggest that it was somehow taking judicial notice of any appraisal techniques or other facts.

"extreme hold-out position" that the business was worth no more than its assets. According to wife, husband "chose not to hire a business valuation expert" and should not be given a second chance to "revert back to an early stage in the litigation and do what he perhaps should have done in the first place." The difficulty with wife's position, however, is that it presumes that husband's burden of offering valuation evidence in this case was somehow different from hers. *See Cook and Cook*, 240 Or App 1, 11, 248 P3d 420 (2010) rejecting the proposition that one spouse had the burden of proving the existence of a marital asset). Moreover, the fact that the trial court *disbelieved* husband's valuation does not prove that the business was worth $600,000. *Id.* ("[E]ven though the trial court was not required to believe husband's testimony that the practice had not increased in value during the marriage, the court's implied rejection of that testimony did not, by itself, create affirmative evidence that any appreciation existed, let alone establish the amount of any such appreciation."). Under the circumstances—where neither party's valuation can be credited on appeal—we conclude that the case should be remanded for the trial court to consider the question of OFMS's value in the first instance, at which time the parties can supplement the record. *E.g., Sands and Sands*, 64 Or App 570, 572, 574, 669 P2d 358 (1983) (holding that, where the trial court had erred in "[p]lacing a value on the husband's pension when there was no evidence as to that matter," the case should be "remand[ed] for further proceedings, including the taking of evidence on the value of the pension (should either party desire to put on such evidence)").

As previously noted, husband advances other assignments of error concerning child support, spousal support, and the overarching effect of those payment requirements. Given the interrelationship between the $300,000 equalizing judgment and the support obligations, as well as the effect of that equalizing judgment on the parties' respective financial positions, we decline to reach husband's remaining assignments of error and instead remand those matters for the trial court to address after reconsidering the property division.[3]

---

[3] Our opinion is not intended to affect child custody or parenting time, which are not at issue on appeal.

Dissolution judgment reversed and remanded with regard to property division, spousal support, and child support; otherwise affirmed. Supplemental judgment for attorney fees reversed.